UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ___5/29/2020___

Mario Valdiviezo,

                      Plaintiff,

            –v–

City of New York, et al.,

                      Defendants.

15-cv-3902 (AJN)

OPINION & ORDER

ALISON J. NATHAN, United States District Judge:

        Plaintiff Mario Valdiviezo brings this action pursuant to 42 U.S.C. § 1983 against the

City and several individual officers allegedly involved in the violation of his constitutional

rights.  Defendants move for summary judgment on Valdiviezo's remaining claims and, for the

following reasons, the Court GRANTS Defendants' motion.

## I.  BACKGROUND[1]

        This Opinion assumes familiarity with the general factual background articulated in the

Court's prior Opinion and Order dated March 29, 2017.  *See* Dkt. No. 45.  In brief, Valdiviezo

alleges that three separate incidents that occurred while he was incarcerated resulted in

deprivations of his constitutional rights in violation of 42 U.S.C. § 1983.  The first incident

involved a fall in a prison shower on August 12, 2014 and medical care he received thereafter.

Third Am. Compl. at 2.  Valdiviezo alleges that the conditions of the prison showers were

"unsanitary" and "deplorable" for at least eighteen months.  *Id.* at 2, 4.  He further alleges that

[1] The following facts are taken from Valdiviezo's Third Amended Complaint, Dkt. No. 32, and the parties' Rule
56.1 statements, Dkt. No. 67; Dkt. No. 71 at 1–4.

after he fell, he was dropped twice by detainees who were ordered by medical staff members to carry him out of the shower. *Id.* at 2. The second incident involved the flooding of Valdiviezo's cell block on two separate occasions. According to Valdiviezo, on both December 31, 2014 and January 19, 2015, his cell block flooded with "sewage," "human waste," "feces," and "polluted water." *Id.* at 3, 6. He further alleges that prison officials refused to move him or allow him to clean his cell. *Id.* at 3. The third incident involved the disturbance of Valdiviezo's sleep by another prisoner. According to Valdiviezo, on the night of December 31, 2014 (the same night as the first of the above-mentioned floods), he was "expos[ed] to [the] extreme behavior," namely the "constant screaming," of another prisoner, which deprived him of sleep that night. *Id.*

Valdiviezo commenced this litigation on May 12, 2015 by filing a Complaint. Dkt. No. 2. It is undisputed that on May 22, 2015, just ten days after filing his Complaint in this action, Valdiviezo settled an unrelated action brought against the City of New York and several of its employees in Bronx Supreme Court. The stipulation of settlement was executed that day by Valdiviezo's attorney, Jeffrey Zeichner, on Valdiviezo's behalf. Dkt. No. 67 ¶ 6; Dkt. No. 71 at 2–3; *see also* Dkt. No. 65-2. The following day, Valdiviezo himself executed a general release in exchange for $3000. Dkt. No. 67 ¶ 7; Dkt. No. 71 at 3; *see also* Dkt. No. 65-1. Valdiviezo was represented by Zeichner when he executed the release. Dkt. No. 67 ¶¶ 7–9; Dkt. No. 71 at 2–3; *see also* Dkt. No. 65-1 (demonstrating that Zeichner notarized Valdiviezo's signature on the general release).

In the general release, Valdiviezo agreed to:

release and forever discharge the City of New York, and all past and present officers, directors, managers, administrators, employees, agents, assignees, lessees, and representatives of the City of New York … , collectively the "RELEASEES", from any

2

> and all claims, causes of action, suits, debts, sums of money, accounts, controversies, transactions, occurrences, agreements, promises, damages, judgments, executions, and demands whatsoever, known or unknown, which RELEASOR had, now has or hereafter can, shall, or may have, either directly or through subrogees or other third persons, against the RELEASEES for, upon or by reason of any matter, cause or thing whatsoever that occurred through the date of this RELEASE.

Dkt. No. 65-1.

Subsequent to signing the general release, Valdiviezo amended his Complaint three times, first on September 24, 2015, Dkt. No. 6, again on April 20, 2016, Dkt. No. 22, and finally on July 26, 2016, Dkt. No. 32.  The Third Amended Complaint, filed on July 26, 2016, is the operative complaint in this action.  It asserts claims against the City, two corrections officers, and two unknown medical staff members for unconstitutional conditions of confinement and deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

In its Opinion and Order dated March 29, 2017, *see* Dkt. No. 45, the Court dismissed Valdiviezo's Third Amended Complaint in its entirety with prejudice.  On October 18, 2018, the Second Circuit affirmed the Court with respect to Valdiviezo's claims against the corrections officers identified in the Third Amended Complaint and all but one of his claims against the City.  *See Valdiviezo v. Boyer*, 752 F. App'x 29, 33 (2d Cir. 2018) (summary order).  It vacated and remanded his claim against the two unknown medical staff members, as well as his claim against the City for unsanitary shower conditions.  *See id.*  In the summary judgment motion now before the Court, which the City filed on August 16, 2019, it moves to dismiss the claims that remain in this case. [2]  *See* Dkt. No. 64.

---

[2] Though Defendants requested to move for summary judgment prior to the close of fact discovery, *see* Dkt. No. 59, they did not ultimately move for summary judgment until after the August 10, 2019 deadline for the close of fact discovery, *see* Dkt. No. 57 (granting Defendants' request for an extension of the close of fact discovery from June 10, 2019 to August 10, 2019); Dkt. No. 63 (granting Defendants' request to extend the summary judgment filing deadline to August 16, 2019).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is warranted, the court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and alterations omitted). There is a genuine dispute of material fact if a reasonable jury could decide in the non-moving party's favor. *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial," and summary judgment should be granted to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

It is generally "the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). However, when the burden of proof at trial would fall on the non-moving party, the moving party may meet its burden by "point[ing] to a lack of evidence . . . on an essential element" of the non-moving party's claim. *Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). To survive a summary judgment motion, the non-moving party must then "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation omitted). In doing so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or

4

unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011)).

Finally, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).  "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Id.* at 475 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)).  Indeed, the Second Circuit has specifically made clear that "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988).  "However, a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## III.  DISCUSSION

Defendants argue that they are entitled to summary judgment on Valdiviezo's remaining claims because these claims are barred by the general release Valdiviezo signed on May 23, 2015.  Valdiviezo, on the other hand, argues that the release does not bar his claims because it was not entered into by him knowingly and voluntarily and therefore is invalid.

### A.  Choice of Law

The Court must first decide the threshold issue of what law applies to the validity of the general release.  As a general matter, "federal law governs the validity of releases of federal

causes of action," but courts "look to state law to provide the content of federal law." *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 15 (2d Cir. 1993). Accordingly, several courts in this Circuit have looked to New York state law to determine whether a general release acts to bar § 1983 claims asserted by plaintiffs alleging violations of their constitutional rights. *See, e.g.*, *Cuffee v. City of New York*, No. 15-cv-8916 (PGG) (DF), 2018 WL 1136923, at *6 (S.D.N.Y. Mar. 1, 2018); *Arzu v. City of New York*, No. 13-cv-5980 (RA), 2015 WL 4635602, at *4 (S.D.N.Y. Aug. 3, 2015); *Cuadrado v. Zito*, No. 13-cv-3321 (VB), 2014 WL 1508609, at *2 (S.D.N.Y. Mar. 21, 2014). However, where, as here, a release would "waive a fundamental constitutional right," other courts have found that the question of validity is controlled by federal law *without* reference to the relevant state law to provide the content of the federal law. *See, e.g.*, *Valdiviezo v. Greer*, No. 14-cv-4897 (KAM), 2018 WL 4863584, at *6 (E.D.N.Y. Oct. 4, 2018) (collecting cases), *aff'd*, 787 F. App'x 48 (2d Cir. 2019) (summary order).

The Court does not find it necessary to determine whether it should evaluate the validity of the release under state or federal law, because it concludes that the outcome would be the same under either standard. *See Valdiviezo*, 787 F. App'x at 49 (determining, with respect to the very release at issue in this litigation, that the court need not "determine whether [the district] court should have evaluated the contract's validity under state or federal law because . . . the outcome would be the same under either standard"). Indeed, under either standard a release is only valid if it is knowing and voluntary. *Compare Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998) ("Under New York law, a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced.") *with Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 259 (E.D.N.Y. 2012) ("[A] waiver of constitutional

rights must be based upon clear and convincing evidence to demonstrate that the waiver is knowing, voluntary, and intelligent." (citing *Faretta v. California*, 422 U.S. 806, 835 (1975))).

For the purposes of its analysis in this Opinion and Order, though, the Court will apply federal law—without reference to state law to supply its contents—because the parties have "manifested their acquiescence" to federal law controlling. *See Lloyd v. City of New York*, No. 15-cv-8539 (RJS), 2017 WL 2266876, at *2 (S.D.N.Y. May 22, 2017) (applying New York law to the validity of the release at issue because the parties "impliedly manifested their acquiescence to New York law controlling" (quoting *DER Travel Servs., Inc. v. Dream Tours & Adventures, Inc.,* No. 99-cv-2231 (HBP), 2005 WL 2848939, at *6 (S.D.N.Y. Oct. 28, 2005))); *see also* Dkt. No. 71 at 10 (citing, in Valdiviezo's opposition brief, to the federal standard); Dkt. No. 74 at 2 (conceding, in Defendants' reply brief, that courts in this jurisdiction "typically" apply federal law).

**B. Defendants are Entitled to Summary Judgment**

The Second Circuit has made clear that, under federal law, the "validity of a release is a peculiarly fact-sensitive inquiry," which requires the Court to assess the "totality of the circumstances" to determine whether the release of claims—and any concomitant waiver of constitutional rights—was knowing and voluntary. *See Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437–38 (2d Cir. 1998); *see also Charlery v. City of New York Dep't of Educ.*, 737 F. App'x 54 (2d Cir. 2018) (summary order). The factors courts consider in conducting this inquiry include:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the

consideration given in exchange for the waiver exceeds . . . benefits to which the [plaintiff] was already entitled by contract or law.

*Livingston*, 141 F.3d at 438; *see also Charley*, 737 F. App'x at 54–55.

The Court applies these factors in determining whether the general release constitutes a valid knowing and voluntary waiver of the § 1983 claims now before the Court. Factors four, five, and six weigh heavily in favor of the validity of the release. Indeed, the release, which is only one page long, is abundantly clear. By its terms, it releases the City and its employees "from any and all claims, causes of action, [and] suits" which Valdiviezo "had, now has or hereafter can, shall, or may have . . . against the [the City] for, upon or by reason of any matter, cause or thing whatsoever that occurred through" May 23, 2015. Dkt. No. 65-1. Directly above Valdiviezo's signature, the release states "THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT." *Id.* Moreover, Valdiviezo was represented by counsel when he executed the release. *See* Dkt. No. 67 ¶¶ 7–9; Dkt. No. 71 at 2–3; *see also* Dkt. No. 65-1. And, in consideration for executing the release, Valdiviezo received $3,000, an amount he does not appear to have otherwise been entitled to receive. Dkt. No. 65-1.

Though Valdiviezo argues that the first three factors weigh against the validity of the release, he offers no admissible evidence showing that the release is not enforceable, "as necessary to raise a genuine dispute as to a material fact." *Valdiviezo*, 2018 WL 4863584, at *7. He states in his memorandum of law in opposition to Defendants' summary judgment motion that his reading and writing skills are below a tenth grade level; that he was presented with the release the same day he signed it; and that he is not fluent in English and was not provided with a translation of the release or a translator at the time of execution. Dkt. No. 71 at 10. He also states in his Rule 56.1 statement—without citing to any evidence in the record—that he did not

understand the content of the general release because it was not translated for him.  Dkt. No. 71
at 3.  However, a "memorandum of law . . . is not evidence at all," and neither the statements in
Valdiviezo's memorandum of law, nor the statements in his Rule 56.1 statement, are supported
by any evidence in the record now before the Court on summary judgment.  *See Giannullo v.
City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (concluding the record did not support
district court's determination that defendants were entitled to summary judgment and noting that
memorandum of law district court cited to was "not evidence at all" and statement in Rule 56.1
statement district court relied upon was not supported by evidence in the record).  Thus,
Valdiviezo fails to support these bald assertions with any admissible evidence—and "a pro se
party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a
motion for summary judgment."  *Lee*, 902 F. Supp. at 429 (citing *Carey*, 923 F.2d at 21).
Accordingly, even reading the record in the light most favorable to Valdiviezo, he has failed to
"come forward with admissible evidence sufficient to raise a genuine issue of fact," with respect
to the release's validity, and no reasonable juror would find it invalid.[3]  *CILP Assocs., L.P.*, 735
F.3d at 123 (citation omitted).

Because the release constitutes a valid knowing and voluntary waiver of Valdiviezo's
constitutional rights, it releases the City and its employees from the remaining claims in this
action, which arise from incidents that predate the May 23, 2015 release.  *See generally* Third.
Am. Compl. (alleging three incidents from which Valdiviezo's claims arise—the August 12,

---

[3] The New York Civil Practice Law & Rules sections that Valdiviezo cites do not aid his argument in any way, as
these sections are inapplicable to the release at issue.  *See* N.Y. C.P.L.R. § 2309 (relating to oaths and affirmations);
*id.* § 2101 (relating to papers "served or filed"); *id.* § 3020 (relating to verification of pleadings).  Moreover, it is
irrelevant that the Third Amended Complaint was filed after Valdiviezo executed the general release.  As
Defendants point it, it is the timing of *accrual* of Valdiviezo's claims that is relevant to whether those claims are
barred by the release, *not* the timing of filing of the pleadings.

2014 shower fall, the December 31, 2014 and January 19, 2015 cell block floods, and the December 31, 2014 disturbance to Valdiviezo's sleep).  Accordingly, Defendants are entitled to summary judgment on Valdiviezo's remaining claims.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion and dismisses Valdiviezo's remaining claims with prejudice.  Accordingly, the Clerk of Court is respectfully directed to enter judgment and close this case.  This resolves Dkt. No. 64.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  *Cf. Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

A copy of this Opinion and Order will be mailed to Mr. Valdiviezo and that mailing will be noted on the public docket.

SO ORDERED.

Dated:  May 29, 2020
    New York, New York

_____
ALISON J. NATHAN
United States District Judge